Haywood, J.
delivered the opinion of Judge Pece and himself.
This is an indictment in the Circuit Court of Hawkins County for forging counterfeit likenesses' of Spanish milled dollars 5 another count for keeping, secreting, and concealing counterfeit likenesses of Spanish milled dollars; verdict, guilty, on the second count; a motion for a new trial overruled ; judgment against the defendant, and a writ of error to this Court. The record brought up did not show a caption ; but on application a cer-tiorari was awarded to bring up a more perfect transcript, which presented this caption: “ State of Tennessee, Hawkins County; be it remembered that heretofore, to wit: at a Circuit Court, began and held for the county *247 of Hawkins, at the court-house in Rogersville, on the fifth Monday in March, in the year of our Lord 1824, pursuant to an Act of the General Assembly, passed at Murfreesborough the 3d of November, 1823, present the Honorable Samuel Powell, Judge; Gabriel Me’Craw, sheriff of Hawkins County, returns now into Court our writ of venire facias, executed on the following persons, to wit: &c. from amongst whom the following persons were drawn as grand jurors for the present term, to wit: J. G. fore; man, &c. who were severally sworn, and being charged by the judge, withdrew from the bar.”
A bill of exceptions signed and sealed on the trial showed that sundry witnesses had been examined, and proved, that whilst in pursuit of one Bunch, who was charged with passing counterfeit coin, Tipton, the prisoner, was at one Anderson’s and wanted to go along, he was told he should not, for he was also suspected, and would give notice to Bunch; then, said Tipton, I will go without pay ; he said it was true he had counterfeit money, but he had received it from a good man on New River, but would not name the person. He said he had destroyed nine of the dollars. Bunch was brought back to the place where Tipton was, and on the way Bunch was told that Tipton had said, that he had let Bunch have the money; and if he, Bunch, would confess that he had got it of Tipton, he should be discharged. Tipton was then told that Bunch said he had gotten the counterfeit money from him, Tipton. Tipton was drunk and behaved rudely. The boys plagued him; he said he was a counterfeiter, and would pass as much as he pleased. Tipton forced himself into the room where Bunch was, and struck him. Tipton was then taken and tied. First, a warrant was taken for his abuse of Bunch, and afterwards, one for counterfeiting, though he was not examined till he became sober. When on examination he said he had received the money from a Mr. Hart, of New River. He evinced no disposition to conceal the counterfeit money. Another witness said the expression of Tipton was, either that he was a counterfeiter or was accused of being a counterfeiter; but could not recollect which. He said he had counterfeit money, and would pass as much as he pleased. Two witnesses proved that Tipton showed thirteen dollars of counterfeit money; that while walking to a still-house, he threw it into a mud-hole. It was in a purse. The witnesses got it out and were about to destroy it with an axe; hut Tipton would not let them. This was on the 1st of March. The examination was on the 20th. The witnesses told Tipton there was danger in having such money. Tipton said he had it from a good man; that he had never attempted to pass it, and would never pass any of it. He said the way he found the money was bad was by its having the same date and stamp. It was proved that Tipton had lived on New River, and was an illiterate, hard-working man; and the witness had never heard anything against his character before this charge. *248 The witness who proved this had offered Tipton thirty-five dollars for the thirteen dollars to get a hold on him for prosecution. Tipton never attempted to conceal the money since he had come from New River. The Court was requested to charge the jury that the whole of his confession must be taken together, and be by the jury equally credited, as well that which went to his guilt, as that which went to exonerate him. But the Court, amongst other things, charged the jury that the law was, that confessions made at the same time were all to he taken together, and the jury was to draw such inferences from them as the truth of the case warranted; that they were not bound to credit the whole. And now two questions are raised on the errors assigned; first, upon the caption to the bill of indictment ; and secondly, on the charge of the Court.
As to the first exception, it is necessary that a caption should accompany every indictment removed into a Superior Court, by certiorari or writ of error, in order to show that the Court which took the indictment had legal authority and power to take it, for the offence specified in the indictment, for unless so taken, there ought not to be any judgment upon it, and not only should the caption exhibit a court having power to take the indictment, but also, that exercising this power, it had conformed to legal requisitions. The county where taken should appear, in order to satisfy the supervising court that it was the proper county in which to take that indictment, the offence being committed within it. The place where taken should appear in order to show that it was the place designated by law for the sitting of the Court that took the indictment. The day and year should be exhibited, that the indictment may appear to have been taken subsequently to the time when the offence was committed. The indictment should appear to have been taken by the oath of twelve men, for a less number cannot legally find it; and it should appear that those twelve acted upon oath, for without it the indictment could not be found; and it should appear that they were jurors of the county where the offence was committed; for otherwise they had no right to find it. Such caption is not peculiar to an indictment found in an inferior court, but is equally necessary to an indictment by cer-tiorari or writ of error from the King’s Bench,in England; 4 Chitty, 188, 195; here the caption does not show that the jury were of the county where the indictment was found; and without searching any further, this is a defect for which the judgment should be reversed, unless, by certiorari, another and better caption could be procured which would show that the juroi’s were of the county. This should appear by a direct statement, not be made out by inference. There is also an error in the charge given by the Court to the jury, in stating to them, without any qualification that they might take part of the confessions made by the defendant, such as they deemed true, and reject the other parts of the same confession which made in favor of the defendant. In 1 Mc’Nally, 350 ; 5 Mod. 165, *249 the true rule is stated, which is, that a confession in a criminal case must be taken altogether and not by parcels. Even if the confession which goes in discharge of the defendant be disproved, or certain circumstances proved to be untrue, or too improbable to be credited, it would seem upon principle that the whole confession should be laid aside in like manner as is done with the testimony of another than the defendant, part of whose testimony is discredited; in which case the whole becomes tainted and suspicious, and unfit to be relied on. And in such case, that the jury should only go upon the evidence independent of confession. But without deciding upon this point, it may, we think, be safely laid down, that if the part of the confession which goes in discharge of the defendant is not disproved the jury cannot be allowed arbitrarily to reject it, and to go upon that part only which criminates the defendant. Upon this latter ground we think it safe to pronounce that the unqualified charge of the Court, leaving it solely to the discretion of the jury to reject the discharging part of the confession at their pleasure was not correct; that therefore, the judgment of the Circuit Court should be reversed; and as the caption is insufficient, the cause must not be remanded, to be. tried de novo, but the defendant must be bound to appear before the Circuit Court at the next term, to be indicted de novo.
Whyte, J.
The argument takes two grounds on this writ of error; the one goes to cut down the present prosecution altogether, by reversal and discharge of the prisoner, upon alleged substantial defects in the caption of the indictment; the other ground goes to reform it by reversal, and granting a new trial.
On the first ground, the alleged defects pointed out by the
counsel as sufficient to authorize a reversal of the judgment of the Circuit Court, are directed against the caption of the indictment, and it is contended, 1st, That it does not appear in the caption that the grand jurors who found the bill' were good and lawful men ; 2dly, That the words “ then and there ” are omitted in the caption; 3dly, That the caption does not state that the grand jury were of the county of Hawkins.
To the first objection, that the grand jurors are not described as “good and lawful men,” whatever might have been its weight in ancient times, it is unavailing at the present day. The language of Chitty, in his first volume C. L. p. 333, .on this point is, “ but this does not seem to be absolutely necessary, especially when the indictment is found in a superior court, because all men shall be so regarded till the contrary appear.” The Circuit Court of Hawkins County, where this indictment was found, is a superior court. The second objection, to wit, the absence of the words “ then and there ” is equally unavailing as the first objection. Bacon classes this objection with the first, and several others, and says, — 3d vol. 573, 574, — “ Some indictments have been quashed for the want of the words proborum et legalium hominum, ‘ good and lawful men,’ and others for the want of the *250 words adhunc et ibidem jurat, &e., ‘ then and there,’ ” “ yet,” says he, “ of late years, exceptions of this kind have not been much favored, especially if the indictment were in a superior court, and that which is omitted be, in common understanding, implied in what is expressed.” This authority lays down the principle that ought to govern at this day, the construction a court is to give the caption of an indictment, to which the present objections, and others of a like nature, are taken; a principle formed in good sense, restraining and contravening the pernicious effect of too strict an adherence to technical forms, when it would operate against the reason that originally prescribed those forms, and be subversive of those ends the use of them was intended to secure. Guided by this principle, let us examine the third objection, and in a few words state the ancient technical form, its intended use, the substitute of modern terms for that form, and, lastly, whether that substitute exists in the caption of the present indictment.
The ancient technical form of the expression was, “ of the said county”; see 2 Hale, 3?. C. 165; 3 Bac. Ab. 572, margin, and 1 Chitty’s C. L. 327. This expression was adopted to show that the jurors who found the bill were of the county in which .the bill of indictment was found, by reference to the county previously expressed, either in the body of the caption, or inserted in its margin. This was deemed necessary to show a compliance with that rule of the common law which required every man to be tried by his peers, which peers were men of the same county, who, being presumed to be acquainted with the accused, his character, &c. &c. were considered the most fitting persons to ascertain the truth or falsehood of the accusation made and brought against him. Its intended use was a guard against the oppression of the crown, and the protection of the innocence of the defendant, and the law deemed that he had this protection, and that it so appeared by the insertion in the caption of the indictment of the words “ of the said county ”; such was the reason for, and such the use of, the words “ of said county,” in the caption of an indictment, and the omission of them raised a technical objection to the validity of the prosecution. Its success, however, has been for a length of time on the decline, and for more than half a century has not been much favored, together with others of the like kind.
The substitute adopted for these words, and held sufficient to supply the omission of them, is thus expressed in 3 Bac. Ab. 573 : “ So the indictment were in a superior court, and that which is omitted be, in common understanding, implied in what is expressed.” It remains to be seen whether, by the caption of this indictment, in what is there expressed, it is implied, in common undei’standing, that the gi’and jurors were of the county of Hawkins. The caption states that, “ at a circuit court, began and held for the county of Hawkins, at the court-house in Rogersville, on the fifth Monday in March, in the year of our Lord 1824, pursuant to an act of *251 the General Assembly, passed, &c., present the honorable Samuel Powell, judge, Gabriel Mc’Craw, sheriff of Hawkins County, returns now into court our writ of venire facias, executed on the following persons, to wit (here follow their names), from among whom the following persons were drawn as grand jurors for the present term, to wit (naming them), who were severally sworn, and being charged by the judge withdrew from the bar,” &c. Upon this caption, my opinion is that it is not only implied in what is there expressed, that the grand jurors were of the county of Hawkins, but it is more than implied therein. It is substantially shown that they were of the county of Hawkins, every necessary step and means authorized and required by the acts of Assembly for their being so are shown, and this fact as necessarily appears as the previous facts constituting it. After the facts stated in this caption, it would be quite a work of supererogation to restate it, which the insertion of the words “ of the said county ” before the jurat would be. The argument is that by the caption, without this expression in terms applied to the jurors, non constat, that they are of the county of Hawkins.
A new trial is moved for, on two grounds: first, for a supposed misdirection of the judge in his charge to the jury; secondly, upon the matter set forth in the affidavit of the defendant.
First, as to the misdirection, the exceptionable part of the charge, by the bill of exceptions, is in these words: “ that confessions made at the same time were all to be taken together, and the jury were to draw such inference from them as the truth of the case warranted; that they were not bound to credit the whole ; if they believed one part true, and another false, they might discard that part which they believed to be untrue, and give such weight to the balance as they believed it merited.”
This charge was given upon a request, by the defendant’s counsel, to charge “ that the whole confessions of Tipton must be taken together by the jury, and equally credited, as well that which tended to show guilt as that which went to exonerate him.”
The whole of a confession is to be taken together, say the books ; what does this expression mean ? That the jury must believe the whole of the confession ? All and everything that the party may choose to say, however incongruous, improbable, or absurd, and give credence to the whole ? It cannot be so ; for between its parts there may be such inconsistency that all cannot stand together. Of the jarring parts, however, one may predominate, and be entitled to credence, while the others justly deserve to be rejected; and shall not the jury, in obedience to common sense, take the distinction, and give the credit accordingly ? In what does evidence, by confession of the party, differ from other evidence given in to a jury, whether in the mode of its presentment, or subsequently, when under their consideration for the establishment of facts; *252 the whole of the confession must be given in evidence; that is, a part is not to be withheld; so must the whole of what every witness says of the matter that is competent testimony be given in; both are to be weighed by the jury, to be passed upon by them, and the degree of credit to be conferred 'is a most important part of their consideration and duty. This credit to be attached will depend on circumstances intrinsic or extrinsic, or both, taken together; intrinsic, or such as necessarily arise out of the confession itself; extrinsic, or such as proceed from things collateral to the confession. An example of the first is, where one part of the confession may be probable, natural, and commanding the ready assent of the mind to the truth of the fact it advances; and the other maybe an obvious physical impossibility, destitute of claim to the least attention. So, in like manner, may the several parts of the testimony of a witness be unequally balanced as to their veracity; as examples of the last, or extrinsic circumstances, may be instanced the behavior of the party in making his confessions, or of the witness in giving in his testimony, the respective characters of each, and their relative situations with regard to the res gestee. In all these cases a discrimination between the parts of the testimony may be necessary, withholding credence from, some, and conferring it upon others. Such, in my opinion, is the province of a jury upon a confession taken singly, and therefore no error in the charge of the judge; but a single confession is not the present case; there are other facts given in evidence by witnesses, aside from the confession of the party, and independent of it; such is that of his dropping the counterfeits in a mud-hole, and that of his having some quicksilver in a vial. These, taken in connection with the matter of the confession, deprived it of the character of being single, assumed by the argument, and presented a compound case for the consideration of the jury. On this case the jury have found the defendant guilty on the second count in the indictment; and to authorize the success of the present application for a new trial this Court must be satisfied, not that the weight of evidence for and against the verdict was nearly balanced, but that that opposed to the conclusion the jury have drawn at the least considerably preponderated. Upon the best consideration of the evidence set forth in the bill of exceptions, that I have been able to give, I cannot arrive at this conclusion. My opinion, therefore, is, that upon this ground the defendant is not entitled to a new trial.
The next ground on-which the application for a new trial is founded is the matter presented by the affidavit of the defendant. Without expressing any opinion on the merits of this matter, which I do not consider to be necessary, it being matter for continuance, as the question must turn upon the time the application was made in relation to the other proceedings in the cause; it is of vast consequence in the judicial administration of justice, that the established order of proceeding should be observed and maintained. *253 This order requires that the application for a continuance upon matter being in the power of the party at the proper time, as was the present case, should precede and not follow the trial of the cause. If otherwise, a party by holding up his ground for a continuance, admitting it to be good until he had expei-ienced the success of a trial, might at all times unnecessarily consume the time of the Court, much to the prejudice of the parties in other causes, and to the great delay of public justice.
My opinion therefore is the judgment of the Circuit Court ought to be affirmed.
This argument is predicated upon the English practice, without adverting to the constitution of the venire facias under our acts of Assembly. In England the sheriff has the whole power over the return of the venire fa-cias ; he may appoint whom he pleases for jurors, and it is his duty to return the whole number without the nomination of any person whatsoever. But here the case is widely different; the sheriff has no power whatever over the return; he cannot appoint even a single juror; this important power is not intrusted to him, but to a court. By the Act of 1809, ch. 49, § 15, the Court of Pleas and Quarter Sessions of each county shall designate the jurors for the Circuit Court of the same county, and cause the sheriff of their county to summon them. Such designation is to be of persons legally qualified to serve as jurors, and shall constitute the venire, of the Circuit Court. The grand jury, therefore, upon the facts stated in the caption, must ex necessitate rei be of the county of Hawkins, and the law will not intend that the Court has not done its duty.
I shall close my observations on this part of the case with a few citations, showing the views of some of the ablest judges that ever sat in Westminster Hall on matters of this kind.
In 2 Hale, 193, Lord Hale observed that “the strictness required in indictments was grown to a blemish and inconvenience in the law, and in the administration thereof; that more offenders escape by the over-easy ear given to exceptions to indictments than by the manifestations of their innocence ; and that the grossest crimes had gone unpunished by reason of these unseemly niceties.” This opinion of Lord Hale has been since confirmed by Lord Kenyon, in 1 East, 314, and by Lord Ellenborough in 5 East, 260; 2 Maule and Selwyn, 386. Lord Mansfield, while he admits that tenderness ought always to prevail in criminal cases, so far at least as to take care that a man may not suffer otherwise than by due course of law, maintains that tenderness does not require such a construction of words (perhaps not absolutely and perfectly clear and express) as would tend to render the law nugatory, and destroy or evade the very end of it; nor does it require of us' that we should give in to such nice .and strained critical objections as are contrary to its true meaning and spirit. And on another occasion the same judge declared it was almost as bad to let a crime go unpunished as *254 to permit an innocent man to suffer. 1 Leach, 283; 1 Chitty, C. L. 170,171.
Judgment was given according to the opinions of Judges Peck and Haywood.